UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA



FILED

DEC 03 2025

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

Vinikumar Jashvantkumar Patel,


      Plaintiff,


v.


Wal-Mart Associates, Inc., and,
WAL-MART STORES EAST, LP,


      Defendant.


Case No.: 5:25-cv-00787-FL


COMPLAINT FOR EMPLOYMENT DISCRIMINATION

(Jury Trial Demanded)


INTRODUCTION


1. This is an action for employment discrimination, hostile work environment, retaliation, and wrongful termination brought by Plaintiff Vinikumar J. Patel ("Plaintiff") against his former

employer, Wal-Mart Stores East, LP ("Defendant" or "Walmart"). This action seeks damages and other relief under Title VII of the Civil Rights Act of 1964, as amended, and state law.

JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

3. Plaintiff has exhausted all administrative remedies. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and received a Notice of Right to Sue, a copy of which is attached hereto as Exhibit A. This action is filed within 90 days of receipt of said notice.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

PARTIES

5. Plaintiff Vinikumar J. Patel is an individual and a resident of Dunn, Harnett County, North Carolina. At all times relevant to this Complaint, Plaintiff was an employee of Defendant.

6. Defendant Wal-Mart Stores East, LP, is a foreign limited partnership doing business in the state of North Carolina, including at its store located at 590 Jackson Blvd, Erwin, North Carolina 28339 (Store #1237), where it employed Plaintiff.

STATEMENT OF FACTS

7. Plaintiff began his employment with Defendant on or about September 2, 2021 and was employed at Store #1237 in Erwin, North Carolina.

Background and Initial Harassment

8. On or about July 2, 2022, and August 11-12, 2022, Plaintiff communicated with coworker Andrine Ulvestad regarding workplace matters. (See Exhibits A-1, A-2).

9. On September 16, 2022, a customer subjected Plaintiff to harassment based on his national origin. The customer questioned where Plaintiff was from and, upon learning Plaintiff was from India, asked, "you're not a terrorist are you." Plaintiff documented this incident in a personal calendar entry. (See Exhibit A-3).

10 A photograph taken of Plaintiff after his shift on September 16, 2022, documents the immediate emotional impact of the incident. (See Exhibit A-3.1).

11. From January to February 2023, Plaintiff took an approved leave of absence for bereavement, which was managed and authorized by Defendant's agent, Sedgwick, and documented with a flight itinerary. (See Exhibit B-1).

Management's Inaction and Escalating Harassment

12. In or around December 2023, due to the hostile environment, Plaintiff sought to mitigate the situation by requesting a transfer to the Online Grocery Pickup (OGP) department, a position with less direct customer interaction. (See Exhibit A-4).

13. Defendant failed to act on Plaintiff's transfer request. On April 7, 2024, Plaintiff stated in a text message to a sibling, "They still haven't moved me to ogp." (See Exhibit A-5).

14. On or about April 8, 2024, Defendant altered Plaintiff's work schedule at the last minute, as documented by a Me@Walmart app notification and text messages. (See Exhibit A-6).

15. The harassment from the same customer continued and escalated throughout 2024. Between July and September 2024, Plaintiff documented ongoing incidents and his repeated reports to management in personal calendar entries and text messages. (See Exhibit A-7).

16. On October 1, 2024, Video recording showing customer's presence in store, October 1, 2024. (See Exhibit A-7.1).

17. On October 4, 2024, Plaintiff Documents October Frustration After Management Failed to Act on September Report. (See Exhibit A-8).

18. Text messages between Plaintiff and coworker Connor, dated October 4, 2024.(See Exhibit A-9).

19. Plaintiff's brother's bank statement reflects a purchase at Sherry's Bakery in Dunn, North Carolina on October 10, 2024. Plaintiff was with his brother at the time of the transaction. (See Exhibit A-10).

Pre-Leave and Termination Events

20. A purchase receipt and bank transaction from November 5, 2024, reflect a purchase made in Dunn, North Carolina. Plaintiff was employed by Walmart at this time, prior to taking any leave. (See Exhibit C-5).

21. In late 2024, Plaintiff requested a personal leave of absence through Sedgwick for the period of January 24, 2025, through March 20, 2025, to travel to India. This leave was **denied** by Defendant. (See Exhibit B-2).

22. Plaintiff worked his last shift on January 23, 2025, as evidenced by purchase receipts from the Erwin, NC Walmart. (See **Exhibit C-3**).

23. Walmart's Terminate Associate Event document, dated January 31, 2025. (See exhibit C-1)

24. Defendant's stated reason for termination was pretextual. Plaintiff was physically out of the country during the period he had requested for leave, a fact proven by his flight itinerary, boarding passes, and passport stamps showing his arrival in India on January 26, 2025, and departure on March 17, 2025. (See **Exhibit C-2**)

25. Defendant's actions violated its own corporate policy regarding No Call/No Show violations. (See Exhibit C-11).

26. A screenshot of Defendant's internal termination process checklist, dated February 1, 2025, shows the termination was processed while Plaintiff was scheduled for a leave that was requested but denied. (See Exhibit C-9).

27. On February 3, 2025, Plaintiff's future shifts were removed from the Me@Walmart app, confirming the termination was processed while he was scheduled for a requested but denied leave. (See Exhibit C-10).

28. Contradicting the termination date, payroll records show Defendant issued payroll deposits to Plaintiff on February 13 and March 13, 2025, after he was allegedly terminated. (See Exhibit C-7). Payroll records from August 2024 establish Plaintiff's history of employment and earnings. (See Exhibit C-8).

29. Testimony from Plaintiff's unemployment hearing, as well as transcripts and a screenshot of Defendant's internal system comments, reveal inconsistencies in the stated reason for termination. (See Exhibits C-4, C-6).

## Post-Termination Events and Communications

30. On March 21, 2025, upon returning to the United States, Plaintiff immediately attempted to resolve his wrongful termination by contacting Sedgwick, as shown in a call log. (See Exhibit D-1).

31. On March 22, 2025, Plaintiff received automated text messages regarding an application for re-hire. (See Exhibit D-2).

32. On March 23, 2025, Plaintiff communicated with manager Mary Williamson regarding his wrongful termination and re-hire status. (See Exhibit D-3).

33. On March 24, 2025, Plaintiff visited the Erwin, NC, store in person to speak with management, as evidenced by a bank transaction record. (See Exhibit D-4). A call log from the same period shows Plaintiff's calls to the store were not answered. (See Exhibit D-5).

34. On March 28, 2025, Plaintiff received a text message from coworker Frankie Katrina Edwards regarding his return to work. (See Exhibit D-5.1).

35. On March 29, 2025, Plaintiff documented further unsuccessful attempts to communicate with Defendant's management in call logs and text messages. (See Exhibit D-6).

36. In July 2025, a former coworker communicated with Plaintiff, corroborating that Defendant's management had a pattern of failing to act on employee reports of harassment. (See Exhibit D-7).

## Educational Disruption and Pre-Termination Damages

37. Pre-Termination Educational Disruption Plaintiff was an enrolled student at Southern New Hampshire University (SNHU), as shown by his last recorded course submission in December 2022. Due to the harassment he experienced at Walmart starting in 2022, Plaintiff had to step away from some coursework. In July 2023, Plaintiff received a re-engagement email from SNHU indicating that he had been out of touch with the university and encouraging him to resume his

studies. (See Exhibits E-1, E-2, E-3). During this period, Plaintiff's ability to continue his education was disrupted by the stress and impact of ongoing workplace harassment, which affected his mental focus and academic progress even before his eventual termination.

38. SAP Notification and Financial Aid Impact On January 15, 2025, while Plaintiff was still employed by Defendant, SNHU notified him that his federal financial aid had been suspended due to a Satisfactory Academic Progress (SAP) issue related to his GPA and course completion. Plaintiff's academic performance had been impacted by the prior disruption caused by workplace harassment. (See Exhibit E-4).

Damages Resulting from Wrongful Termination

39. The financial strain is documented in communications with his SNHU Academic Advisor regarding his inability to pay tuition and manage coursework, leading to him withdrawing from a class. (See Exhibits E-5, E-6, E-7).

40. The financial hardship is further evidenced by a bank statement showing low funds, cryptocurrency transactions made to cover educational expenses, SNHU payment receipts, and a student account statement showing an outstanding balance. (See Exhibits E-8, E-9, E-10, E-11).

41. The financial distress caused by Defendant's actions directly and negatively impacted Plaintiff's credit, as shown in declining FICO score reports from May-June 2025. (See Exhibit E-12).

42. Plaintiff also incurred tax liabilities and penalties with the North Carolina Department of Revenue for the period of July 1, 2024, through September 30, 2024, as a direct result of financial disruption caused by ongoing workplace harassment, including incidents in July and two separate incidents in September 2024. These taxes were ultimately paid by Plaintiff in July and August 2025. (See Exhibit E-13).

43. The emotional and mental distress suffered by Plaintiff is evidenced by personal documentation, including a photograph related to the death of a pet, personal calendar entries, a Reddit post regarding his mental health struggles, and personal workout logs. (See Exhibits E-14, E-15, E-16).

COUNT I: HOSTILE WORK ENVIRONMENT (Title VII of the Civil Rights Act of 1964

44. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45. Plaintiff was subjected to unwelcome harassment based on his race and/or national origin (Indian).

46. The Plaintiff was subjected to repeated harassment by a customer over a period of years. The customer referred to the Plaintiff with derogatory and xenophobic names, including "Iran" and "terrorist." The harassment escalated over time, with the customer returning to the store and making threats of physical harm toward the Plaintiff.

47. The Plaintiff's work environment was affected by the harassment, creating conditions that were intimidating, hostile, and abusive, and which interfered with his ability to carry out his job duties by causing emotional distress, fear, and distraction.

48. Defendant, through its managers and team leads, knew or should have known about the harassment. Plaintiff repeatedly reported the specific customer's conduct, and management was further on notice of a broader pattern of customer harassment towards employees.

49. Defendant failed to take prompt and effective remedial action to stop the harassment. This deliberate indifference permitted the hostile work environment to persist and escalate.

50. As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered and continues to suffer damages, including emotional distress, humiliation, and loss of enjoyment of life.

COUNT II: DISCRIMINATION (Title VII of the Civil Rights Act of 1964)

51. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52. Plaintiff is a member of a protected class based on his race and national origin.

53. Plaintiff was qualified for his position and for the OGP position to which he sought a transfer.

54. Plaintiff suffered an adverse employment action when Defendant repeatedly denied or ignored his requests to transfer to the OGP department, forcing him to remain in the hostile, customer-facing role where the harassment was occurring.

55. Plaintiff alleges this adverse action was taken because of his race and/or national origin.

56. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff was forced to remain in a hostile role and has suffered damages, including emotional distress.

COUNT III: RETALIATION (Title VII of the Civil Rights Act of 1964)

57. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58. Plaintiff engaged in legally protected activity under Title VII when he repeatedly reported to his managers and team leads that he was being subjected to discriminatory harassment based on his race and national origin.

59. After Plaintiff engaged in this protected activity, Defendant subjected Plaintiff to a final, materially adverse employment action by terminating his employment.

60. A causal connection exists between Plaintiff's protected activity and his termination. The termination was the culmination of Defendant's failure to address his ongoing complaints about the hostile work environment.

61. Defendant's stated reason for terminating Plaintiff, attendance points accrued during a leave request for a pre-planned international trip that was denied, was a pretext for retaliation.

62. As a direct and proximate result of Defendant's retaliatory termination, Plaintiff has suffered damages, including lost wages and benefits, future lost wages, and emotional distress.

COUNT IV: WRONGFUL TERMINATION

63. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 62 as if fully set forth herein.

64. Defendant terminated Plaintiff's employment on or about January 31, 2025.

65. The pretextual reason given for Plaintiff's termination was the accumulation of attendance points for "no call/no shows."

66. The attendance points that led to his termination were accrued during a period for which Plaintiff had requested a pre-planned leave of absence for international travel, which was **denied**, and during which he was physically out of the country.

67. Plaintiff's termination for absences that occurred while he was on a pre-planned leave of absence, which had been **requested but denied**, and pursuant to a travel plan of which Defendant was notified, was wrongful, retaliatory, and in bad faith.

68. As a direct and proximate result of Defendant's wrongful termination of his employment, Plaintiff has suffered and continues to suffer significant damages, including the loss of his job, wages, benefits, and other pecuniary losses.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vinikumar J. Patel respectfully requests that this Court enter judgment in his favor and against Defendant Wal-Mart Stores East, LP, as follows:

A.  A declaratory judgment that the acts and practices of Defendant complained of herein violated the laws of the United States;

B.  An award of compensatory damages, including back pay, front pay, and other employment benefits Plaintiff would have received but for Defendant's unlawful conduct, in an amount to be determined at trial;

C.  An award of compensatory damages for past and future emotional distress, humiliation, and pain and suffering in an amount to be determined at trial;

D.  An award of punitive damages for Defendant's malicious, willful, and reckless conduct, in an amount to be determined at trial;

E.  An order of reinstatement to his former position or a substantially equivalent position;

F.  An award of reasonable attorneys' fees and costs incurred in this action; and

G.  Such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: Decwmber 03, 2025

Respectfully submitted,
*Vinikumar Jashvantkumar Patel*

# Pro Se Vinikumar Jashvantkumar Patel

# 24 Timber Creek Lane
# Dunn,NC,28334

# 910-600-2041
# Vinip113@gmail.com